# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cr-00082-TWP-MJD |
| ) | |
| KEVIN M. BACKSTROM, ) | -02 |
| ) | |
| Defendant. ) | |

## ORDER DENYING MOTION FOR MISTRIAL

This matter is before the Court on Defendant Kevin M. Backstrom's ("Backstrom") oral motion for mistrial, following an outburst by co-defendant Keith Jones ("Jones") during closing arguments. For the following reasons, the motion for mistrial is **denied**.

## I.  BACKGROUND

In the early evening of November 15, 2023—the seventeenth day of a complex, five-defendant, twenty-three count drug trafficking trial—Jones started shouting at the Government attorneys during their closing argument. While discussing the potency of fentanyl allegedly possessed by Jones, the Government argued that when warned of the potency and that people might "start dying"—"to Keith Jones, that doesn't matter." During his outburst, Jones accused the Government attorney of lying, began using profanity, and called them derogatory names. During his outburst, Jones remained seated and yelled from his seat in the gallery of the courtroom.[1] Members of the gallery, who appeared to be Jones' family members, spoke out loud asking Jones to calm down. Shortly after Jones' outburst began, the jury was removed from the Courtroom and

---

[1] Due to the size of the courtroom and number of defendants, the defendants and their counsel were seated in the gallery during trial, as were members of the public.

taken to the jury room. Outside the presence of the jury, Jones' outburst continued for a short time until the United States Marshals cuffed him, with Jones' cooperation. The Court instructed Jones to relax and inquired of Jones whether he wanted to go to the holding cell and watch the reminder of the argument from a video feed downstairs, or not watch at all. Jones responded "no… I've had enough of you all…" and continued to use profanity. As he had requested, Jones was removed from the courtroom for the reminder of the evening. The jury was not present for Jones' cuffing or removal from the courtroom.

Still outside the presence of the jury, counsel for Backstrom orally moved for a mistrial. Counsel argued that Jones' outburst prejudiced Backstrom, and a mistrial was therefore necessary. The Court stated the outburst did not warrant a mistrial. The Court then discussed with all counsel the admonishment it would give to the jury regarding the outburst and Jones' resultant absence. After some discussion, the Court proposed an admonishment to which no party objected.

When the jury was brought back into the courtroom, the Court told the jury that Jones had elected not to be present for the remainder of the day, and admonished the jury that Jones' comments are not relevant to the evidence, should have no bearing on the jury's deliberations, and should in no way have any negative effect against any of the Defendants. The Government then finished its closing argument, and court adjourned for the evening.

The next morning, November 16, 2023, a conference was held outside the presence of the jury in which Jones apologized for the outburst and assured the Court that he would control his emotions. Jones returned for the conclusion of the trial proceedings--each defendant's closing argument, the Government's rebuttal and the Court gave final instructions--without further incident.

## II.     DISCUSSION

This Order addresses why a mistrial was not necessary. In the event of an outburst during trial, the district court is presumed to be in the "best position to determine whether a cautionary instruction, rather than a mistrial, is sufficient to address any potential prejudice." *United States v. Mannie*, 509 F.3d 851, 856 (7th Cir. 2007). In "the vast majority of cases," the potential bias resulting from a co-defendant's outburst can be cured with a cautionary instruction or, if appropriate, *voir dire*. *Id.* While there are "[c]ertain courtroom situations [that] are so beyond the pale, so prejudicial, that no amount of *voir dire* and cautionary instructions can remedy the defect," those situations are "indeed rare." *Id.* at 586–87.

*United States v. Mannie* presented one of those "rare" situations in which a co-defendant's conduct was so disruptive that the resulting bias against the other defendant was incurable. In that case, Mannie's co-defendant, Patterson, engaged in a pattern of disruption both before and during their joint trial. During the pretrial conference, Patterson repeatedly spoke out of turn and yelled, and told the court to "get used to this." *Id.* at 853. During jury selection, Patterson, who was wearing his orange prison jumpsuit, argued with the court and threatened his lawyers. Patterson was removed from the court several times throughout trial, but each time he was permitted to return, he was disruptive. Later in the trial, jurors stated they saw individuals in the gallery staring them down and making gang signs. Patterson also gestured at a juror at one point, and another juror noticed a member of the gallery staring at that juror. *Id.* at 855. Later in trial, Patterson's behavior escalated. During cross-examination of a government witness, Pattern began yelling at counsel, accusing them of "setting him up for a fall." *Id.* Patterson "then stood up, knocked one of his attorneys to the ground, and grabbed the other attorney by his necktie, and threw him to the ground as well. Both attorneys were in a tangle in the corner and one limped around afterwards." *Id.* At that point, Mannie moved for a mistrial and to sever trials. The district court conducted *voir*

*dire* of each juror and denied Mannie's motion. *Id.* Mannie was convicted, and on appeal, the Seventh Circuit vacated Mannie's conviction and remanded the case for a new trial. The *Mannie* court concluded that "[t]he combination of what the jury was exposed to in [that] case—Patterson garbed in prison attire verbally assaulting his attorneys, a campaign of intimidation by members of the gallery, a violent courtroom brawl—" amounted to incurable prejudice. *Id.*

In deciding that Patterson's conduct warranted a mistrial, the Seventh Circuit court cited a Fifth Circuit case, *Braswell v. United States*, 200 F.2d 597, 602 (5th Cir. 1952), as another situation in which an outburst created incurable prejudice against co-defendants. In *Braswell*, in the presence of the jury, two of seven co-defendants physically assaulted a United States Marshal, and one defendant needed to be physically retrained from swallowing a capsule. *Id.*

*Mannie* and *Braswell* are both readily distinguishable from this case. Here, Jones did not engage in a campaign of disruption. Each day of trial for nearly seventeen days, Jones arrived in business attire, and he remained calm, respectful, and attentive. During his outburst, Jones did not cause or engage in any physical altercations. He merely yelled at the Government attorneys following derogatory remarks about Jones made during closing argument. And although Jones used profanity, the jury had heard Jones use the same or similar language in numerous recorded conversations and phone calls played during trial (without objection from Jones counsel). Importantly, the jury was not present for most of Jones' disruptive behavior. Immediately after Jones outburst began, the jury was promptly escorted to the jury room. At most, the jurors heard less than a minute of Jones' comments before they calmy and orderly exited the courtroom. The few comments from the gallery during the outburst were also distinguishable from the gallery's behavior in *Mannie*. In this case, Jones family members made comments for him to calm down.

4

They did not stare, use signs or signals, or make any comments directed at the jury, counsel, or the Court.

As the Seventh Circuit has reiterated, the disruptive circumstances that creates incurable prejudice "is truly rare." "[T]rials are, in the end, human events: disruptions are bound to occur. Cautionary instructions and jury interviews should remain the primary weapons against improper jury bias. It is axiomatic in our system of justice that an individual is entitled to a fair trial—not a perfect one." *Mannie*, 509 F.3d at 857.

Here, Jones' short verbal outburst did not incurably prejudice the jury against Jones or his co-defendants. Although the outburst was sudden and unexpected, it did not involve any physical altercations; it was not directed toward the jury; it did not include any language the jury had not heard before; and it followed weeks of good behavior by Jones. Although the Court discussed polling the jury, no defendant requested that the Court conduct a *voir dire*, and the Government advocated against it. Considering the brevity and relative mildness of Jones' outburst, as well as the jury's calm demeanor while exiting the Courtroom and upon their return, *voir dire* was unnecessary. The Court's admonishment was sufficient to cure any potential bias from Jones' outburst, it did not deprive Backstrom of a fair trial and does not warrant a mistrial.

### III.   CONCLUSION

For the foregoing reasons, Backstrom's oral motion for a mistrial was appropriately **DENIED**.

**SO ORDERED**.

Date:   11/28/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

5

Distribution:

Ainuddin Ahmed
Ahmed Law Firm
aineahmed@aineahmedlaw.com

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bradley.blackington@usdoj.gov

Jonathan A. Bont
Frost Brown Todd LLP
jbont@fbtlaw.com

Kelsey Massa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelsey.massa@usdoj.gov

Ross G. Thomas
The Law Office of Ross G. Thomas
rossthomas@defenselawyerindiana.com

Stacy R. Uliana
ULIANA LAW
stacy@ulianalaw.com

Maxwell Bryant Wiley
BALDWIN PERRY & KAMISH, P.C.
max@criminaldefenseteam.com